## A06A0550. MOON v. THE STATE.
### (633 SE2d 418)

PHIPPS, Judge.

Marcus Moon was convicted of armed robbery and aggravated assault. The trial court granted permission for him to file an out-of-time motion for new trial, but then denied the motion. Moon now appeals. He challenges the sufficiency of the evidence, charges his trial counsel with ineffective assistance, and contends that the trial court erred in disallowing jury strikes and in improperly communicating with a juror. Finding that the trial court erred in disallowing two of Moon's jury strikes and instructing the juror not to tell anyone after the allegedly improper communication had taken place, we reverse.

1. Moon first challenges the trial court's disallowance of two of his peremptory strikes on grounds they were racially motivated.

In *Batson v. Kentucky*,[1] the United States Supreme Court held that the Equal Protection Clause prohibits a prosecutor from challenging potential jurors solely on account of their race.[2] In *Georgia v. McCollum*,[3] the Court extended *Batson* by holding that the Equal Protection Clause likewise prohibits a criminal defendant from engaging in purposeful discrimination on the basis of race in the exercise of peremptory challenges.[4] To evaluate claims that the state or defendant used peremptory challenges in a racially discriminatory manner, the trial court must engage in a three-step process: first, the opponent of a peremptory challenge must make a prima facie showing of racial discrimination; second, the burden of production shifts to the proponent of the strike to give a race-neutral reason for the strike; and third, the trial court decides whether the opponent of the strike has proven discriminatory intent.[5]

Following jury selection in this case, the state challenged defense counsel's use of eight of his twelve peremptory strikes to remove all eight white males from the thirty-member jury panel, thereby resulting in a jury of five black females, three black males, four white females, and no white males. The state opposed the strikes that the defense exercised against white males, claiming they were used with the intent of excluding that section of the population from the jury. The court found that the state had established a prima facie case; asked defense counsel to explain the basis for each of his strikes, listened to rebuttal by the prosecuting attorney; and, based on the

[1] 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

[2] *Evans v. State*, 183 Ga. App. 436, 439 (3) (359 SE2d 174) (1987).

[3] 505 U. S. 42 (112 SC 2348, 120 LE2d 33) (1992).

[4] *Chandler v. State*, 266 Ga. 509, 510 (2) (467 SE2d 562) (1996).

[5] Id.

assumption that defense counsel had used his peremptory strikes to remove all white males from the venire, disallowed Moon's exercise of peremptory strikes against jurors 5, 7, and 10 and ordered those panel members reseated.

After the trial court concluded this process, however, the parties clarified that defense counsel had used only seven of his peremptory strikes to remove seven of the eight white males from the jury panel, thereby exhausting all of the defense's peremptory challenges, and that the eighth white male was subsequently removed by the state. Therefore, although the persuasiveness of a proffered explanation may be diminished by the strength of a prima facie case,[6] the court labored under a misapprehension as to the strength of the state's prima facie case in ruling on the validity of the defense's use of its peremptory challenges.

In reliance on cases such as *Malone v. State*[7] and *McBride v. State*,[8] Moon contends that in ordering the subject jurors reseated the court improperly combined steps two and three of the *Batson/McCollum* process and thereby improperly relieved the state, as the opponent of the strikes, from its burden of proving their impermissible use.

In *Malone*, we made clear that

> [i]n articulating a race-neutral explanation for striking a juror, the proponent of the strike is not required to enunciate a plausible or persuasive explanation, just one that is clear, reasonably specific and that does not deny equal protection. At this second step of the inquiry, the issue is the *facial validity* of the attorney's explanation. Unless a discriminatory intent is inherent in the attorney's explanation, the reason offered will be deemed race neutral.[9]

*Malone* further pointed out that

> it is not until the *third* step that the persuasiveness of the justification becomes relevant — the step in which the trial court determines whether *the opponent* of the strike *has carried his burden of proving purposeful discrimination*. At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination. But to say that a trial judge *may choose to*

---

[6] *White v. State*, 257 Ga. App. 723, 725 (2) (572 SE2d 70) (2002) and cits.

[7] 225 Ga. App. 315 (484 SE2d 6) (1997).

[8] 247 Ga. App. 767 (545 SE2d 332) (2001).

[9] Supra, 225 Ga. App. at 316-317 (1) (citations and punctuation omitted; emphasis in original).

> *disbelieve* a silly or superstitious reason at step 3 is quite different from saying that a trial judge *must terminate* the inquiry at step 2 when the race-neutral reason is silly or superstitious. The latter violates the principle that the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.[10]

The defendants in both *Malone* and *McBride* gave race-neutral explanations for exercising their peremptory strikes, and the trial courts rejected those explanations without showings by the state as to why the explanations were unpersuasive and thus pretextual. Here, in contrast, the court did consider arguments from the state as to why defense counsel's explanations were pretextual before ruling on defense counsel's justifications for exercise of the peremptory strikes. But the court rejected defense counsel's justifications for striking jurors 5 and 7, ruling that the justifications were not race-neutral. Under the three-step process of *Batson/McCollum*, those rulings were in error.

Juror 5 in this case was an attorney. When the court asked why counsel had struck him, counsel responded that he had been personally acquainted with him for years and knew that he was prejudiced against persons such as his client. The court responded that counsel had asked this panel member no questions of record to establish that he was prejudiced. The court also noted that "because we don't have any white males on this jury, that it'd be a stretch to say all eight" of the peremptory strikes exercised by defense counsel against white males were proper. When defense counsel questioned whether the basis for his strike had to be established on the record, the prosecuting attorney argued that the court should reject counsel's proffered explanation based on lack of support in the record. The court expressed its agreement and disallowed the strike.

In response to questioning by the court, defense counsel stated that he struck juror 7 because he was an insurance company executive. Counsel sought to explain that from having had insurance company executives on juries through the years, he usually had found them to be prejudiced against clients such as his. After the prosecuting attorney pointed out that there was another panel member employed by the same insurance company whom the defense had not struck, the court disallowed the strike.

In arguing that the court properly ordered juror 7 reseated, the state relies on cases holding that the opponent of a strike may carry its burden of persuasion by showing that a similarly situated juror of

---

[10] Id. at 318 (1) (citation and punctuation omitted; emphases in original).

another race was not struck.[11] We find these cases inapposite. Defense counsel struck juror 7 because he was an insurance company executive. The court disallowed the strike because someone employed by the same insurance company had not been struck. But the record shows that this other person who was not struck was only an employee of the insurance company, not an executive. Thus, the two jurors were not similarly situated. The court, therefore, erred in reseating the juror who had been struck.

The record reflects that the court disallowed defense counsel's exercise of a peremptory strike against juror 5, not because the court disbelieved counsel when he said that he was personally acquainted with the juror and knew that he was prejudiced against people like his client, but rather because he had not been asked any questions on voir dire to show that he was prejudiced and because of the strength of the state's prima facie case. During voir dire it was, however, established that counsel and the juror were personally acquainted with each other by reason of the fact that they were both lawyers in the community, and counsel's reluctance to ask questions of the juror to establish his prejudice in open court is certainly understandable. And the state's prima facie case was not so strong as the court thought it to be at the time. For these reasons, we find the court also erred in ordering this juror reseated.

2. Moon next complains of the action taken by the trial judge after it was shown that he had engaged in ex parte communication with a juror and then instructed her not to reveal what had happened. We find some merit in this complaint.

Following a lunch recess after the jury was selected but before it was sworn, defense counsel moved to have the jury disqualified because the trial judge had eaten lunch with one of the jurors. For the record, the judge then stated that he had eaten lunch in a small cafeteria on the ground floor of the building where the courtroom was housed; that because the cafeteria was crowded, he sat at a table with a woman whom he did not know; and that they engaged in a pleasant conversation concerning matters wholly unrelated to the case being tried. The court thereupon denied the motion but gave defense counsel an opportunity to question the juror in court to verify what had happened. Counsel responded by telling the court that he had been advised that the court had asked the juror "not to tell anybody" they had lunch together. The judge acknowledged that after lunch, when he realized the woman was a juror, he had in fact cautioned her not to tell anyone they had lunch together. Nonetheless, the judge

---

[11] E.g., *White v. State*, supra.

continued to deny the defense motion on its merits, finding no error or prejudice to the defense.

> Unquestionably the trial judge should not in any manner communicate with the jury about the case, in the absence of the accused and his counsel, pending the trial; and the better practice is for the judge to have no communication with the jury on any subject except through the medium of the sworn bailiff in charge of the jury; and the communication should be restricted, in the absence of the accused and his counsel, to matters relating to the comfort and convenience of the jury. There should be no communication which would tend in any manner to prejudice the accused; and unless the character of the communication clearly shows that it could not have been prejudicial to the accused, the presumption of law would be that it was prejudicial.[12]

Although the record does reflect that the trial judge had lunch with the juror not knowing her identity and that the character of the communication between them was not prejudicial to Moon,[13] the court committed a serious error in judgment in admonishing the juror to conceal their albeit inadvertent contact rather than forthrightly disclosing the matter to all concerned. Because he had taken that action, the judge should have disqualified himself from ruling on the pending defense motion. Because Moon's conviction is reversed in Division 1, we need not decide whether the judge's failure to recuse himself sua sponte constituted reversible error.[14]

3. There is no merit in Moon's challenge to the sufficiency of the evidence. We decide evidentiary challenges under the standard set forth in *Jackson v. Virginia*.[15] Using that standard, we view the evidence in a light most favorable to the jury's verdict.[16]

So viewed, the evidence showed that on the night of October 19, 1998, three masked men with handguns appeared inside a restaurant in Columbus at closing. One of the men entered the manager's office, forced the employees who were there to get on the floor by pointing his gun at them, robbed the safe, and took the female employees' purses. The men got away with over $19,000.

---

[12] *Carter v. State*, 273 Ga. 428, 430 (3) (541 SE2d 366) (2001) (citation omitted).

[13] Compare *Russell v. State*, 236 Ga. App. 645, 647 (2) (512 SE2d 913) (1999).

[14] See generally *Dodson v. Dean*, 256 Ga. App. 4, 7 (567 SE2d 348) (2002).

[15] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[16] E.g., *Riddle v. State*, 267 Ga. App. 630, 632 (2) (600 SE2d 709) (2004).

About a week later, the lead investigator in the case, Columbus Police Department Sergeant Harvey Hatcher, was told by an anonymous telephone caller that Moon was involved in the robbery. In possession of a warrant for Moon's arrest, officers went to the house he occupied with his mother and other family members and obtained her consent to search the residence. Inside Moon's room, they found weapons and clothing identified as similar to the robbers'. A picture of Moon was incorporated into a photographic spread and, based on the "very distinct" appearance of Moon's eyes, one of the robbery victims identified him as the robber who had entered the office. She also positively identified him at trial.

In July 1999, Moon was arrested on another criminal charge. When being interviewed by a detective regarding that charge, Moon apparently denied committing the other crime; but, in regard to the armed robbery, he said, "Y'all can go ahead and give me that charge." Upon being interviewed by Sergeant Hatcher in regard to this robbery, Moon denied involvement in the robbery itself but claimed that two of the robbers had later brought weapons used and money taken in the robbery to his house for him to conceal. One of the other robbers, however, identified Moon as one of the perpetrators of this robbery.

This evidence was sufficient under the *Jackson v. Virginia* standard for a rational trier of fact to have found Moon guilty beyond a reasonable doubt of the crimes for which he was convicted.[17]

4. Finally, Moon's ineffective assistance of counsel claim is moot. *Judgment reversed. Ruffin, C. J., and Smith, P. J., concur.*

DECIDED JUNE 22, 2006.

*James D. Lamb,* for appellant.
*J. Gray Conger, District Attorney, Ryan R. Leonard, Assistant District Attorney,* for appellee.

---

[17] See generally *Whitaker v. State*, 275 Ga. 521, 522 (1) (570 SE2d 317) (2002).