## A08A2324. AGUEY-ZINSOU v. THE STATE.
(674 SE2d 366)

DOYLE, Judge.
A DeKalb County jury found Francis Aguey-Zinsou guilty of one count of trafficking in ecstacy,[1] one count of possession of cocaine,[2] one count of possession of marijuana,[3] and one count of giving a false name to a law enforcement officer.[4] On appeal, Aguey-Zinsou argues that the trial court erred by denying (1) his motion to suppress evidence, and (2) his motions for directed verdict and for new trial based on sufficiency of the evidence with regard to the drug counts. For the following reasons, we affirm.

On appeal from a criminal conviction, the evidence must be viewed in a light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence.

more than 20 years."
[31] 268 Ga. 44 (485 SE2d 185) (1997).
[32] Id. at 46 (2).
[1] OCGA § 16-13-31.1.
[2] OCGA § 16-13-30 (a).
[3] OCGA § 16-13-30 (j).
[4] OCGA § 16-10-25.

Moreover, on appeal, this court determines sufficiency of the evidence; we do not weigh the evidence or determine witness credibility. The standard of review is whether, based on the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[5]

Viewed in this light, the evidence shows that in the early morning hours of November 1, 2005, Officer James Bowie of the DeKalb County Police Department answered a call concerning a report of gunshots at Wood Terrace Apartments. Officer Bowie patrolled the complex for about five or ten minutes, when he received another call regarding a suspicious person at Cameron Brook Apartments — a complex separated from Wood Terrace by a distance of 100 to 150 yards. Upon arriving at the building from which the suspicious-person call originated, Officer Bowie found Aguey-Zinsou, whispering into his cellphone in the building's breezeway. Aguey-Zinsou identified himself as "Francois Josias," and indicated he had been shot in the arm. Aguey-Zinsou also gave the officer a license number; neither the name "Francois Josias" nor the license number returned a match to a valid identification card. Aguey-Zinsou told Officer Bowie that two men had robbed him, and when questioned, he told the officer that he had not been to Wood Terrace Apartments. The officer called for an ambulance, and other officers arrived at the Cameron Brook scene.

Thereafter, the officers returned to Wood Terrace to further investigate the discharged-firearms call, which they suspected was related to Aguey-Zinsou's injury. At Wood Terrace, the officers found bullet casings, a pair of shoes laying in the breezeway of one of the buildings, at least one bullet hole, and a trail of blood leading up to Apartment 2025. The front door of the apartment had been forced open, and inside, the officers found a photograph of Aguey-Zinsou in one bedroom and a shoebox that contained marijuana, cocaine, ecstacy,[6] and a letter addressed to Aguey-Zinsou in the other bedroom.

Aguey-Zinsou was arrested and charged based on the items in Apartment 2025. He moved to suppress the evidence, and the trial court denied the motion. The trial court also denied Aguey-Zinsou's motion for a new trial, which he filed on the basis that the convictions were not supported by the evidence. This appeal followed.

---

[5] *McKinney v. State*, 293 Ga. App. 419 (667 SE2d 210) (2008); see *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[6] At trial, Aguey-Zinsou stipulated to the identity of the suspected narcotics.

1. Aguey-Zinsou argues that the trial court erred in denying his motion to suppress based on its erroneous determination that the officers properly entered Apartment 2025 without a warrant in order to search for gunshot victims or to complete a protective sweep.

> When reviewing a ruling on a motion to suppress, where, as here, the evidence is uncontroverted and there exists no question regarding witness credibility, we review de novo the trial court's application of the law to the facts presented. In doing so, however, we construe all evidence presented in favor of the trial court's findings and judgment, and we will not disturb the trial court's order on a motion to suppress if there is any evidence to support it.[7]

The evidence presented at the motion to suppress hearing showed that, after having called Emergency Medical Services to attend to Aguey-Zinsou, the officers returned to Wood Terrace and found that the door of Apartment 2025 had been forced open (the door frame was damaged), and the officers also found bullet casings and blood in the hallway near the apartment. Because of the state of the apartment and because Aguey-Zinsou had not called 911 to report that he had been shot, the officers were afraid that additional individuals may have been "hurt or dead inside the apartment." The officers entered the apartment and checked the rooms, finding no people, but the officers saw a photograph of Aguey-Zinsou and also found bags of narcotics in an open shoebox on the floor of one of the bedrooms.

"[T]he Fourth Amendment usually prohibits police officers from entering a person's home without the homeowner's consent, absent a warrant allowing them to do so."[8] However, the exigencies of a situation can "make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment."[9] Furthermore, "[t]he plain view doctrine, which must be considered on a case-by-case basis, permits the warrantless seizure of evidence visible to a police officer who sees it from a vantage point the officer is legally entitled to occupy."[10]

In *Love v. State*, we determined that a trial court properly denied a motion to suppress marijuana found in a home because the officers had a reasonable belief that an emergency existed that might require

---

[7] (Citations and punctuation omitted.) *Love v. State*, 290 Ga. App. 486 (659 SE2d 835) (2008).

[8] Id. at 487.

[9] (Citation and punctuation omitted.) Id.

[10] (Citation and punctuation omitted.) *State v. Peterson*, 273 Ga. 657, 658 (543 SE2d 692) (2001).

their attention.[11] The officers answered an emergency call in which neighbors of the defendants explained that the front door to the defendants' home was wide open, even though it was a cold, dark evening, and the defendants appeared to be away from the house.[12] We reasoned that because the officers found a car in the driveway but received no answer when they identified themselves at the open door of the house, the officers did not violate the Fourth Amendment by entering the home to look for a possibly sick or injured homeowner or a possible intruder.[13]

Similarly, here, the trial court did not err by finding that the circumstances confronted by the officers — finding the door to Apartment 2025 forced open and bullet casings and blood nearby — supported a reasonable belief that an individual in need of aid may have been inside. Aguey-Zinsou did not tell the officers that he had been to Apartment 2025 and did not call for emergency aid after being shot, so the officers could have reasonably believed that Aguey-Zinsou had injured any occupant(s) of the apartment or that Aguey-Zinsou's alleged robber had also injured the occupant(s).

Aguey-Zinsou argues that because the officers were able to identify a photograph of him, a credit card, and a letter addressed to him, that the search exceeded what would be reasonable in order to look for victims. That the officers might have glanced at these items, which were in plain view during the initial sweep, does not lead to the conclusion that they should have been suppressed. As in *Love*, the officers here did not search locations in the apartment that could not have concealed a victim or perpetrators.[14] The officers checked cabinets large enough to hide an individual, but did not check drawers or other smaller locations. Furthermore, as explained above, the officers' warrantless intrusion into Apartment 2025 was justified, and the officers did not seize any evidence, including the narcotics, which were in plain view, before obtaining a warrant.[15] Accordingly, we find no reversible error in the trial court's order denying the motion to suppress.

2. Aguey-Zinsou next argues that the trial court erred in denying his motion for a directed verdict and motion for new trial based on sufficiency of the evidence because the State presented only circumstantial evidence to convict him of the three drug violations. He contends that the evidence supports a number of reasonable hypotheses that are inconsistent with his guilt because testimony estab-

---

[11] See 290 Ga. App. at 486-489.
[12] See id at 486-487.
[13] See id. at 489-490.
[14] See id. at 490.
[15] See id.

lished that at least five other males lived in the apartment, and one of those individuals could have planted the narcotics in his room.

> Possession may be either actual or constructive. Constructive possession exists where a person though not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing[, and it must be] based upon some connection between the defendant and the contraband other than spatial proximity.[16]

"When a constructive possession case is based wholly on circumstantial evidence, the law requires that the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."[17] Reasonable hypotheses, however, do not include "bare possibilities that the crime could have been committed by someone else."[18] "Whether any given hypothesis is reasonable is a question for the jury, and we will not disturb the jury's finding in this regard unless it is unsupportable as a matter of law."[19]

Aguey-Zinsou cites to *Allison v. State*,[20] and *Mitchell v. State*,[21] in support of his argument. Those cases are inapposite. In *Allison*, we reversed a conviction for reckless conduct related to the discharge of a firearm that led to the injury of a small child in an adjacent apartment.[22] We reasoned that because the offense of reckless conduct required evidence of action that represented "a 'substantial and unjustifiable risk,'" the State's failure to submit evidence regarding the proper handling of a firearm in comparison to the alleged conduct of the defendant resulted in a failure of proof of the elements of the offense.[23]

In *Mitchell*, the Supreme Court of Georgia reversed a cocaine trafficking conviction of the passenger of a vehicle in which cocaine was found under the passenger-side floor mat.[24] The Court determined that the jury's verdict was not reasonable because it was

---

[16] (Citations and punctuation omitted.) *Prather v. State*, 293 Ga. App. 312, 313 (1) (667 SE2d 113) (2008).

[17] (Citation and punctuation omitted.) Id.; see also OCGA § 24-4-6.

[18] (Punctuation omitted.) *Slaughter v. State*, 282 Ga. App. 276, 280 (3) (638 SE2d 417) (2006).

[19] Id.

[20] 288 Ga. App. 482 (1) (654 SE2d 628) (2007).

[21] 268 Ga. 592 (492 SE2d 204) (1997).

[22] See 288 Ga. App. at 482-483 (1).

[23] See id. at 483-484 (1).

[24] See 268 Ga. at 592-593.

based on mere spatial proximity to hidden contraband, and the defendant in that case did not own or control the vehicle in question.[25] Here, in comparison to *Mitchell*, the State presented evidence linking Aguey-Zinsou to the narcotics.

In this case, the evidence showed that the shoebox containing the narcotics was discovered in the first bedroom of Apartment 2025, which also contained male clothing and approximately $4,400. In that same bedroom, officers found a bank statement and cell phone bill, the latter dated October 11, 2005, that were addressed to Aguey-Zinsou at Apartment 2025. The shoebox itself also contained a computer floppy disk, labeled "Francis Aguey" and an envelope addressed to Frances A. Aguey. Aguey-Zinsou's sister testified that he was living in that room of Apartment 2025 at the time of the incident. Testimony regarding Aguey-Zinsou's behavior at the time of the incident — his denial of having been to Wood Terrace Apartments, failure to call 911 after he was shot, and act of giving a name and number that did not match that of his valid identification card — was suspicious, which also supports the verdict.

In light of the foregoing, sufficient evidence was presented to support the jury's findings. Aguey-Zinsou contends that the evidence did not rule out other hypotheses because evidence was presented that other males were living in Apartment 2025 at the time, and those males could have possessed the drugs instead of him or planted the drugs in the apartment. Nevertheless, because those hypotheses were presented to the jury, and because the jury's determination that Aguey-Zinsou possessed the narcotics is supported by the evidence, we will not disturb the verdicts.[26]

*Judgment affirmed. Andrews, P. J., and Bernes, J., concur.*

DECIDED FEBRUARY 26, 2009.

*W. Michael Maloof*, for appellant.
*Gwendolyn Keyes Fleming, District Attorney*, for appellee.

---

[25] See id. at 593.
[26] See *Prather*, 293 Ga. App. at 313-315 (1); *Slaughter*, 282 Ga. App. at 280; *Blair v. State*, 216 Ga. App. 545, 547 (1) (455 SE2d 97) (1995).