## A09A0480. REID v. THE STATE.
(681 SE2d 671)

BERNES, Judge.

Following a jury trial, Theo Reid was convicted of trafficking in cocaine and possession of a firearm during commission of a felony. On appeal, Reid claims that the evidence was insufficient to support the verdict. He also contends that the trial court erred in denying his motion to suppress evidence and in upholding the state's challenge to his peremptory strike of a potential juror. For the reasons set forth below, we disagree and affirm.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.

(Citations and footnotes omitted.) *Sexton v. State*, 268 Ga. App. 736 (1) (603 SE2d 66) (2004).

So viewed, the evidence shows that while on a routine patrol on May 31, 2006, an Atlanta police officer smelled burning marijuana through the open window of his police car. He noticed Reid standing on the front patio of a duplex, holding what appeared to be a "marijuana cigarette blunt." The officer approached Reid, who admitted to possessing a small amount of marijuana. Reid also informed the officer that he was outside doing repairs on his home, and "was going in and out of the apartment."

The door to the residence was open. Inside, Reid's co-defendant Tubauris Scott[1] was sitting on a couch, and in front of Scott the officer could see a scale, a gun, and what appeared to be illegal drugs. The officer immediately went inside the residence. He and his partners then arrested Reid and Scott. They recovered a gram of cocaine from Reid's pants and a baggie of marijuana and a marijuana cigarette from a couch located on the outside of the residence. A forensic chemist later determined that the suspected contraband which the officers seized from inside the residence weighed 33.64 grams and consisted of over 60 percent pure cocaine.

The state also presented similar transaction evidence. According to an Atlanta police detective, on February 25, 2005, he witnessed Reid reach inside his jacket pocket and take out a clear plastic bag

---

[1] Reid and Scott were tried together. After the state presented its case, the trial court granted Scott's motion for a directed verdict of acquittal.

YALE LAW LIBRARY

containing several smaller baggies. Reid took one of the smaller baggies and handed it to another person in exchange for paper currency. The officer recovered the larger bag from Reid and determined that the baggies therein contained what appeared to be crack cocaine. A forensic chemist confirmed that the material seized from Reid tested positive for cocaine.

1. Reid argues that the evidence showed no more than he was in spatial proximity to the cocaine and that the jury's verdict was therefore unsupported and must be reversed. We disagree.

"Any person who . . . is knowingly in possession of 28 grams or more of cocaine or of any mixture with a purity of 10 percent or more of cocaine" commits the offense of trafficking in illegal drugs. OCGA § 16-13-31 (a) (1).

> Possession may be either actual or constructive. Constructive possession exists where a person[,] though not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, and it must be based upon some connection between the defendant and the contraband other than spatial proximity.

(Punctuation and footnote omitted.) *Aguey-Zinsou v. State*, 296 Ga. App. 319, 323 (2) (674 SE2d 366) (2009). For this purpose, "[p]ower may be inferred from access to the drugs, while the matter of intent may be derived from the surrounding circumstances." *In the Interest of Q. P.*, 286 Ga. App. 225, 227 (648 SE2d 731) (2007).

The evidence showed more than Reid's mere proximity to the contraband. In light of Reid's statements to the officers, the jury could reasonably infer that Reid resided in the house where the drugs and the gun were found. Since Reid was going in and out of his residence, he had access to the contraband in full view of the entrance. The jury could find Reid's intent to exercise control over the cocaine from the surrounding circumstances, which included his physical possession of a smaller quantity of cocaine, and in light of the similar transaction evidence, which tended to show Reid's course of conduct in selling cocaine. See *Sherrer v. State*, 289 Ga. App. 156, 160 (2) (656 SE2d 258) (2008); *Slaughter v. State*, 282 Ga. App. 276, 280 (3) (638 SE2d 417) (2006); *Williams v. State*, 277 Ga. App. 106, 107-108 (1) (625 SE2d 509) (2005). Although Scott was also present at the scene, "whether the evidence that others had access to the contraband was sufficient to rebut the evidence that [Reid] was in possession of the drugs was properly reserved for the jury." (Punctuation omitted.) *Castillo v. State*, 288 Ga. App. 828, 830 (655 SE2d 695) (2007). See also *Kahn v. State*, 235 Ga. App. 229, 231 (1) (b) (509 SE2d 137) (1998) (the state was not required to prove that defendant

was in exclusive possession of the drugs). The evidence was sufficient for any rational trier of fact to find Reid guilty beyond a reasonable doubt of the crimes charged. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Reid claims that the trial court erred in denying his motion to suppress the evidence seized from his home. We disagree.

Reid's sole argument is that there was no "real evidence" to contradict his testimony that the door to his home was closed when he encountered the police officers. This was the critical factual issue at the hearing on the motion to suppress because the state contended that the contraband was in plain view of officers through an open door.[2] "When the outcome of a motion to suppress depends on the credibility of the witnesses or on disputed facts, and the trial court has not committed an error of law, the court's ruling will not be disturbed on appeal." (Footnote omitted.) *State v. Ellison*, 271 Ga. App. 898, 901 (3) (a) (611 SE2d 129) (2005).

> Objects within the plain view of an officer who is in a lawful position are subject to seizure and may be introduced into evidence. The plain view rule applies only if (1) the initial intrusion which afforded the plain view was lawful, (2) the discovery of the evidence was inadvertent, and (3) the incriminating nature of the evidence was immediately apparent.

(Footnote omitted.) *State v. Watson*, 292 Ga. App. 831, 832 (666 SE2d 90) (2008).

According to Reid, the door to his home was closed when he encountered the officers. Reid also testified that during their search the police "kicked the door in" to his roommate's bedroom. However, an officer testified that the door to Reid's house was open, that he could see a "big slab of cocaine" inside, and that to his knowledge no officers kicked down any doors. Reid's landlord also testified that he inspected the property two days after the police had searched the premises. The landlord maintained that when he arrived the outside locks were still engaged and that he did not remember any damage

---

[2] The state also argued below that the presence of the gun (which was only a few feet away from Scott) placed the officer in reasonable fear for his safety, and that exigent circumstances therefore authorized the officer's warrantless entry into the home for the purpose of seizing the weapon and the contraband. See generally *State v. Venzen*, 286 Ga. App. 597, 598-599 (1) (649 SE2d 851) (2007) ("access to contraband in plain view may be had by obtaining a warrant, obtaining consent, or by the existence of exigent circumstances") (citation and punctuation omitted). Reid does not raise this issue on appeal, but challenges the trial court's denial of his motion to suppress only on the grounds that the door to the residence was closed and the drugs and the gun were therefore not in plain view of the officer.

YALE LAW LIBRARY

to the interior doors. Notwithstanding Reid's contention that "officers [were] confused" and gave unreliable testimony at the hearing on motion to suppress, the credibility of these witnesses was a matter of the trial court. See *Anderson v. State*, 267 Ga. 116, 118-119 (2) (475 SE2d 629) (1996).

Given the testimony of the first officer that the door to Reid's home was open, and considering the landlord's testimony indicated a lack of damage to the doors in the residence, there is evidence in the record to support the trial court's denial of Reid's motion to suppress. Accordingly, we affirm the trial court's ruling. See *Woodard v. State*, 289 Ga. App. 643, 648-649 (1) (a) (658 SE2d 129) (2008) ("it was for the trial court, not this Court, to resolve any conflicts in the record or questions concerning the credibility of the agent in deciding the motion to suppress"); *Galbreath v. State*, 213 Ga. App. 80, 83 (2) (443 SE2d 664) (1994) ("[t]he evidence authorized the determination that the contraband . . . [was] in plain view and [was] discovered without resort to an investigatory search, while the officer was in a lawful vantage point").

3. Lastly, Reid claims that the trial court erred in upholding the state's challenge to the defense strike of Juror No. 6. Again, we disagree.

"In [*Georgia v. McCollum*, 505 U. S. 42 (112 SC 2348, 120 LE2d 33) (1992),] the United States Supreme Court held that the equal protection clause prohibits a criminal defendant from engaging in purposeful discrimination on the basis of race in the exercise of peremptory challenges." (Citation and punctuation omitted.) *Daniels v. State*, 238 Ga. App. 511, 513 (1) (519 SE2d 269) (1999). "The Equal Protection Clause of the United States Constitution prohibits discrimination in jury selection on the basis of gender as well as race." (Citation and punctuation omitted.) *Allen v. State*, 280 Ga. 678, 682 (2) (b) (631 SE2d 699) (2006).

> To evaluate claims that the . . . defendant used peremptory challenges in a racially discriminatory manner, the trial court must engage in a three-step process. The opponent of a peremptory challenge must make a prima facie showing of racial discrimination; the burden of production shifts to the proponent of the strike to give a race-neutral reason for the strike; the trial court then decides whether the opponent of the strike has proven discriminatory intent.

(Citation and punctuation omitted.) Id. at 680 (2) (b). The "ultimate burden of persuasion . . . rests with, and never shifts from, the opponent of the strike." (Citation and footnote omitted.) *Chandler v. State*, 266 Ga. 509, 510 (2) (467 SE2d 562) (1996).

The record shows that during the process of jury selection the defense raised a *Batson*[3] motion challenging the prosecutor's strike of Juror No. 15. The state then raised its *McCollum* motion challenging the defense's strike of Juror No. 6, a white female, whom the state argued the defense had excluded from the jury by reason of her race and gender. When these motions were raised, the jury had not been fully selected.[4] The defense had accepted five jurors, including a black male, a black female, and three white males. The defense had exercised seven of its eleven strikes. One strike was of a white male, and the other six strikes were of white women.

The trial court concluded that the state had made a prima facie case of discrimination and asked the defense to provide a race neutral reason for the strike. Reid's counsel responded that Juror No. 6 was struck because the juror "seemed like she wanted more vengeance" because, following the rape and murder of her friend, the likely perpetrator was prosecuted on a stalking charge. The trial court found the defense's explanations to be pretextual because the defense had accepted as a juror a black female who, when asked to expand on her indication that the drug laws were too lenient, stated that the guilty should "spend time" rather than be placed on probation and "learn a lesson for what they have done."

We find no error in the trial court's ruling. As to the first step of the evaluation process, "once the trial court requires the opponent of a . . . *McCollum* motion to give reasons for striking potential jurors, the preliminary issue of prima facie discrimination becomes moot." *White v. State*, 257 Ga. App. 723, 724 (1) (572 SE2d 70) (2002). In the second step of the process, the defense carried its burden of production by giving a racially neutral reason for the strike. However, "[d]uring step three of a [*McCollum*] challenge, the opponent of the strike may carry its burden of persuasion by showing that similarly-situated members of another race were seated on the jury." (Punctuation and footnote omitted.) *Nelson v. State*, 289 Ga. App. 326, 331 (2) (657 SE2d 263) (2008). As to Juror No. 6, the primary reason for the strike given by the defense was that the juror believed that the person likely responsible for the rape and murder of her friend was not sufficiently punished. The black female juror accepted by the defense agreed that "people who are convicted of drugs offenses should be incarcerated and not be given probation." Given that the

---

[3] *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

[4] Although Reid does not raise the issue on appeal, we note that the trial court was not required to treat the state's challenge as premature. See *Jones v. West*, 555 F3d 90, 97 (2d Cir. 2009) (contention that *Batson* challenge was premature was "essentially an argument that Jones had not adduced sufficient evidence at the time . . . to raise an inference of discrimination").

defense was willing to accept this juror, who expressed her desire for greater punishment of drug offenders — the very offense for which Reid was on trial — we conclude that the trial court did not clearly err in finding that the state carried its burden of showing that the defense's proffered reason for striking Juror No. 6 was a pretext for discrimination. See *Blair v. State*, 267 Ga. 166, 167 (2) (476 SE2d 263) (1996); *Daniels*, 238 Ga. App. at 513 (1) ("[a] trial court's findings on whether the opponent of the strike has met his burden of persuasion are entitled to great deference and will be affirmed unless clearly erroneous") (citation and punctuation omitted).

Blair argues that the trial court "did not take into account the fact that the jury pool had, to begin with, a disproportionate number of white females," and so what appeared to the trial court to be a pattern of discriminatory strikes was actually consistent with the composition of the jury pool. During its analysis of the state's challenge, the trial court calculated that of the 40 prospective jurors, 13 were white females, and Reid does not propose otherwise.[5] We fail to see any basis for Reid's claim that the number of white females in the pool was "disproportionate." To the extent that Reid's argument can be construed as a claim that the trial court was acting under a misapprehension as to the strength of the state's prima facie case of discrimination, he fails to show that the trial court was laboring under any significant mistake of fact. See *White*, 257 Ga. App. at 725 (2) (in the third step of the process, the trial court may consider the strength of the prima facie case in relation to the reasons given for the strike). Compare *Moon v. State*, 280 Ga. App. 84, 85 (1) (633 SE2d 418) (2006) (in ruling on the *McCullom* challenge, the trial court labored under a misapprehension and failed to realize that one of the white males struck from the jury panel had been struck by the state and not by the defense).

*Judgment affirmed. Smith, P. J., concurs. Phipps, J., concurs in Divisions 1 and 2, but in judgment only as to Division 3.*

DECIDED JULY 10, 2009.

*Carl P. Greenberg*, for appellant.
*Paul L. Howard, Jr., District Attorney, Peggy R. Katz, Assistant District Attorney*, for appellee.

---

[5] The trial court's calculations also appear to be consistent with the information available in the record.