A06A0507. DUNCAN v. THE STATE.
(629 SE2d 577)

BERNES, Judge.

John Harrison Duncan appeals from his conviction on one count of felony theft by receiving stolen property. Duncan contends that there was insufficient evidence to convict him or to support a felony sentence. He also contends there was a fatal variance between the allegations of the indictment and the proof at trial. We agree that the evidence was insufficient to support felony sentencing, but we affirm in all other respects.

> On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

(Citation and punctuation omitted.) *Rosser v. State*, 276 Ga. App. 261, 262 (1) (623 SE2d 142) (2005).

So viewed, the evidence reflects that on April 28, 2004, an individual broke through the front door of Miriam Thompson's residence and stole several household items, including a yellow-and-black DeWalt NASCAR racing jacket. The perpetrator also took several clothing items, including a Tim Duncan "throwback" jersey, which were owned by her son's friend, Larue Howard, who frequently stayed at Thompson's residence.

On the same day as the break-in, Howard saw Duncan in the neighborhood next to where Thompson's residence was located. Howard observed that Duncan was wearing the exact same "Sean John shirt with . . . Dickie shorts" that Howard "had laid out on the couch that morning" at Thompson's residence and that had been stolen during the break-in.

Thompson's residence was broken into again on May 10, 2004. The perpetrator broke through the patio door and stole a DVD player. On that same date, between approximately 12:00 and 1:00 p.m., Duncan's uncle exited his home to go to the store. As he did so, he

noticed that Duncan was in the driveway on his bike. While they talked, Duncan's uncle went to put something into his trash can located outside near the back of the house. According to Duncan's uncle, as he walked to the trash can, Duncan said "don't worry about it, that whatever it was was his but he didn't want the police to think that he had stole it." Duncan then rode off on his bike, stating that he was going to the candy store. Duncan's uncle noticed a police vehicle across the street. In the trash can, Duncan's uncle found a yellow-and-black DeWalt NASCAR racing jacket, a DVD player, and a "couple other items."

In their investigation of the two break-ins, the police were unable to locate any eyewitnesses to the crimes. No identifiable fingerprints were lifted from Thompson's residence. The police did not take into evidence the property found in the trash can of Duncan's uncle or otherwise recover any of the alleged stolen property.

Duncan subsequently was arrested, indicted, and tried on one count of burglary and one count of felony theft by receiving stolen property relating to the break-ins of Thompson's residence. The jury convicted Duncan of felony theft by receiving stolen property but acquitted him of burglary.

By stipulation, Duncan was also tried in the same proceedings on multiple counts relating to two other residential break-ins that occurred on April 22, 2004 and September 1, 2004, respectively. Duncan has not appealed any of his convictions relating to those counts.

1. Conviction of Theft by Receiving Stolen Property. "A person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen property which he knows or should know was stolen. . . ." OCGA § 16-8-7 (a). Here, the indictment charged that Duncan "between the dates of April 28, 2004 and May 10, 2004, did receive stolen property, one DVD player, one DeWalt Nascar racing jacket, one Tim Duncan throwback jersey, the property of Miriam [Thompson], with a value of more than $500, which he knew or should have known was stolen."

Although the value of the goods was alleged in the indictment, "value is not an element of the crime of theft by receiving stolen property" and is relevant only "in order to distinguish between a felony and a misdemeanor for purposes of sentencing." (Citation and punctuation omitted.) *Campbell v. State*, 275 Ga. App. 8, 10 (3) (619 SE2d 720) (2005). As long as "it . . . appear[s] that the stolen property is of some value," the conviction can be sustained. *Bryan v. State*, 148 Ga. App. 428, 429 (2) (251 SE2d 338) (1978). Furthermore, when the indictment lists specific items of stolen property, the State is not required to prove the receipt of every one of those items by the defendant to sustain a conviction. See *Green v. State*, 177 Ga. App.

179, 180 (2) (338 SE2d 761) (1985); *Taylor v. State*, 140 Ga. App. 447, 448 (4) (231 SE2d 364) (1976); *Lewis v. State*, 82 Ga. App. 280, 286 (60 SE2d 663) (1950); *Hagood v. State*, 5 Ga. App. 80 (1) (62 SE 641) (1908); 52B CJS Larceny § 102. Thus, Duncan's conviction for theft by receiving stolen property can be sustained if the State presented sufficient evidence to prove all of the elements of the offense with respect to at least one of the items of stolen property listed in the indictment. See id.

Here, Duncan contends that there was insufficient evidence (a) that any of the items found in his uncle's trash can were the stolen items set forth in the indictment, (b) that he had possession of any of the items found in the trash can, or (c) that he knew or should have known that any of the items were stolen. We address each of these contentions in turn.

(a) Duncan first argues that the State failed to prove that any of the items found in his uncle's trash can were the same items listed in the indictment as being stolen from Thompson's home. "If the goods found . . . are not shown to be that which has in fact been stolen, proof of larcenous taking is absent." (Citations and punctuation omitted.) *Johnson v. State*, 236 Ga. App. 356, 358 (2) (511 SE2d 921) (1999); *Curtis v. State*, 190 Ga. App. 173, 174 (2) (378 SE2d 516) (1989), overruled on other grounds, *Brown v. State*, 274 Ga. 31 (549 SE2d 107) (2001). See also *Causey v. State*, 139 Ga. App. 499, 500-501 (2) (229 SE2d 1) (1976).

We agree with Duncan that there was insufficient evidence that the DVD player found in the trash can was the same one that was stolen from Thompson's residence for which Duncan was indicted. At trial, Thompson never identified the DVD player as the one that had been stolen. No identifying information, such as a brand name or serial number, linking the player found by Duncan's uncle with the one stolen from Thompson's home, was ever placed in evidence. Nor was the DVD player found in the trash can photographed by investigators, taken into evidence by the police, or introduced into evidence at trial. Furthermore, and most significantly, there was testimony at trial that a DVD player was also stolen as part of a previous April 22, 2004 residential break-in for which Duncan was also being tried and for which he was convicted. That DVD player likewise was never recovered by the police. Thus, the jury was left to guess as to whether the DVD player found by Duncan's uncle was linked to the prior residential break-in that occurred on April 22, the break-in of Thompson's residence, or neither. Under these circumstances, the State failed to meet its burden of showing that the DVD player was the same one that was stolen from Thompson as charged in the indictment. See *Johnson*, 236 Ga. App. at 358 (2); *Curtis*, 190 Ga. App. at 174 (2); *Causey*, 139 Ga. App. at 501 (2).

Additionally, we note that the indictment charged Duncan with receipt of "one Tim Duncan throwback jersey" stolen from Thompson's residence. While Duncan's uncle testified that he found a "couple other items" in the trash can, he further testified that he could not remember whether a "Tim Duncan throwback jersey" was included among those items. Thus, the State failed to meet its burden with respect to this stolen item as well.

Nevertheless, we conclude that the State, despite its other failures in proof, presented sufficient evidence showing that the yellow-and-black DeWalt NASCAR racing jacket found in the trash can was the same one that was stolen from Thompson's residence for which Duncan was indicted. At trial, Thompson identified the specific brand, style, and color scheme of the jacket, and Duncan's uncle described the racing jacket he found in his trash can as being of the same brand, style, and color scheme. Furthermore, as previously discussed, Larue Howard testified that on the same day that all of the clothing items were stolen from Thompson's residence, he saw Duncan wearing some of his stolen clothes. The State is entitled to rely upon circumstantial evidence to show that the property found was the same as that which was stolen. See *Ayers v. State*, 164 Ga. App. 195, 197 (4) (296 SE2d 772) (1982). And, once one item of stolen property is identified as being in the possession of the defendant, "any question of identity of the remainder goes to the weight of the evidence relating to identification, and the weight of the evidence is a question for the jury." (Citation and punctuation omitted.) *Dean v. State*, 181 Ga. App. 452 (352 SE2d 633) (1987). See also *Kimsey v. State*, 164 Ga. App. 377, 378-379 (2) (296 SE2d 159) (1982). Although a close question, the evidence presented by the State was sufficient to allow a rational jury to find beyond a reasonable doubt that the racing jacket found by Duncan's uncle was the one stolen from Thompson's residence as charged in the indictment.

(b) Duncan argues that there was insufficient evidence that he had possessed or exercised control over any of the items found in his uncle's trash can. We disagree. Duncan's uncle testified that Duncan told his uncle that what was in the trash can "was his." As such, there was evidence from which a rational jury could conclude beyond a reasonable doubt that Duncan had possessed or exercised control over the items found in the trash can, including the stolen DeWalt NASCAR racing jacket. See generally *Parrott v. State*, 188 Ga. App. 564, 565 (373 SE2d 828) (1988).

(c) Finally, Duncan argues that there was insufficient evidence that he knew or should have known that any of the items found in the trash can were stolen. Again, we cannot agree. "An essential element of the crime of theft by receiving stolen property is that the accused

knew or should have known that the property was stolen." (Footnote omitted.) *Johnson v. State*, 276 Ga. App. 505, 506 (1) (a) (623 SE2d 706) (2005).

> Unexplained possession of recently stolen property, alone, is not sufficient to support a conviction for receiving stolen property but guilt may be inferred from possession in conjunction with other evidence of knowledge. Guilty knowledge may be inferred from circumstances which would excite suspicion in the mind of an ordinary prudent man.

(Citations and punctuation omitted.) *Hurston v. State*, 202 Ga. App. 311, 312 (1) (414 SE2d 303) (1991). Here, there was evidence in addition to the fact that Duncan had possessed the recently stolen DeWalt NASCAR racing jacket which supported an inference of guilty knowledge. Duncan's unprovoked statement to his uncle that "he didn't want the police to think that he had stole" the items in the trash can, made at the same time that a police vehicle was parked across the street, demonstrated that he knew or had a grave concern that the items were stolen. Moreover, the fact that the racing jacket was placed in a trash can indicated that Duncan was trying to conceal it, which, in turn, indicated that he knew the jacket had been stolen. Accordingly, there was sufficient evidence for a rational jury to conclude beyond a reasonable doubt that Duncan knew or should have known that the racing jacket found in the trash can had been stolen. See, e.g., *Campbell v. State*, 226 Ga. 883, 889 (5) (178 SE2d 257) (1970) (defendant's guilty knowledge inferred in part from fact that defendant had hidden the stolen goods); *Wilson v. State*, 227 Ga. App. 59, 60 (1) (488 SE2d 121) (1997) (defendant's concern that goods had been stolen inferred in part from fact that defendant went out of his way to stress to pawn shop employee that he was pawning the goods on behalf of his friend).

2. Alleged Fatal Variance. Duncan also appears to contend that there was a fatal variance between the allegations of the indictment and the evidence adduced at trial.[1] He points out that Count 5 of the indictment — the count for theft by receiving stolen property — charged that the items had been stolen from "Miriam Johnson," while

---

[1] Additionally, Duncan argues that his conviction for theft by receiving stolen property should have merged into the count of the indictment charging him with the burglary of Thompson's home. But, Duncan was *acquitted* on that burglary count. Thus, there is nothing into which his conviction of theft by receiving stolen property could be merged. Conversely, acquittal on the burglary count did not demand an acquittal on the count for theft by receiving stolen property. See, e.g., *Crumpton v. State*, 185 Ga. App. 735 (365 SE2d 536) (1988); *Smith v. State*, 141 Ga. App. 64 (232 SE2d 401) (1977).

the evidence presented at trial showed that the items had been stolen from Miriam Thompson. We are unpersuaded that the difference in the victim's name constituted a fatal variance.

Georgia courts have held that "where a variance exists between the victim's name as alleged in the indictment and as proven at trial, . . . the variance is not fatal if the two names in fact refer to the same individual, such as where a mere misnomer is involved or where the variance is attributable to the use of a nickname or alias by the victim." (Citation omitted.) *Harrison v. State*, 192 Ga. App. 690, 691 (1) (385 SE2d 774) (1989). See also *Bland v. State*, 182 Ga. App. 626, 627 (356 SE2d 704) (1987); *Wilson v. State*, 67 Ga. App. 404 (20 SE2d 433) (1942). Here, the variance between the name of the victim in the indictment and the name of the victim adduced at trial plainly was the result of a scrivener's error, as evidenced by the fact that Count 4 of the indictment charged Duncan with the burglary of the residence of "Miriam Thompson." Furthermore, throughout the trial the prosecution and defense both indicated that they were aware that the alleged victim of the burglary and theft by receiving stolen property were the same person, Miriam Thompson. "Clearly, defendant did not go to trial unaware of the identity of the alleged victim." *Bland*, 182 Ga. App. at 627.

> The fact that there was [an inconsistency between the indictment and evidence over the] victim's last name . . . is not a fatal variance where, as in this case, the allegations definitely informed [Duncan] of the charges against him so as to enable him to present his defense and not to be taken by surprise, the allegations adequately protected him against another prosecution for the same offense, and the evidence was sufficient to establish that the two last names in fact referred to the same individual.

(Citation omitted.) *Buchanan v. State*, 273 Ga. App. 174, 180-181 (3) (614 SE2d 786) (2005). We find no grounds for reversal.

3. Sentencing. Duncan contends that there was no evidence showing that the items identified as being stolen were of sufficiently high value to warrant imposition of a felony sentence. We agree.

"OCGA § 16-8-12 (a) provides that a person convicted of [theft by receiving stolen property] shall be punished as for a misdemeanor but if the property which was the subject of the theft exceeded $500.00 in value, the crime may be punishable as a felony." (Punctuation and footnote omitted.) *Graham v. State*, 251 Ga. App. 395, 396 (1) (554 SE2d 528) (2001). See OCGA § 16-8-12 (a). We conclude there was insufficient evidence to support felony sentencing under OCGA § 16-8-12 (a). As we determined in Division 1 (a), the evidence was only

sufficient to authorize Duncan's conviction based on the stolen De-Walt NASCAR racing jacket. However, there was no evidence presented at trial showing that the value of the racing jacket exceeded $500. Because the evidence clearly reflected that the jacket had some value, we vacate Duncan's sentence and remand for imposition of misdemeanor punishment on the theft by receiving stolen property count. See *Graham*, 251 Ga. App. at 397 (1) (c); *Denson v. State*, 240 Ga. App. 207, 208 (2) (523 SE2d 62) (1999); *Searcy v. State*, 163 Ga. App. 528, 529 (2) (295 SE2d 227) (1982).

*Judgment affirmed in part, vacated in part and case remanded for resentencing. Andrews, P. J., and Barnes, J., concur.*

DECIDED APRIL 10, 2006.

*James W. Bradley*, for appellant.
*Jewel C. Scott, District Attorney, Billy J. Dixon, Assistant District Attorney*, for appellee.