## A11A0837. ROBINSON v. THE STATE.
## A11A0838. ROGERS v. THE STATE.
### (719 SE2d 601)

MILLER, Presiding Judge.

Co-defendants George Robinson and Larry Rogers were indicted[1] and convicted on one count of conspiracy to commit theft by receiving stolen property, OCGA §§ 16-4-8, 16-8-7, as well as twelve counts of theft by receiving stolen property, OCGA § 16-8-7 (a). Robinson and Rogers each subsequently filed and amended motions for new trial, which were denied by the trial court. Robinson and Rogers each filed notices of appeal.

In Case No. A11A0837, Robinson contends that (i) there was insufficient evidence to sustain his convictions on several counts, on the grounds that the State presented only hearsay evidence in support of certain elements of those crimes; (ii) the trial court erred by denying his motion for new trial; (iii) he received ineffective assistance of counsel; and (iv) the trial court erred in denying his motion to suppress, denying his motion for mistrial, charging the jury on "deliberate ignorance," and overruling his objection to the State's use of his prior conviction for impeachment. As further detailed in Division 4 (d) below, we remand Case No. A11A0837 with direction that the trial court enter express findings on the record as to whether Robinson's prior conviction was admissible under the balancing test required by OCGA § 24-9-84.1 (b). If the trial court determines that the prior conviction was inadmissible after engaging in this balancing test, then a new trial will be required. If the trial court determines that the prior conviction was admissible, then a new trial will not be mandated, in which case we affirm as to Robinson's remaining enumerations of error.

In Case No. A11A0838, Rogers contends that (i) the trial court erred in allowing similar transaction evidence; (ii) he was denied conflict-free assistance of counsel; (iii) the trial court erred by failing to recuse itself; (iv) the trial court erred by allowing the State to inform the jury that Rogers fled during his first trial; and (v) the trial court erred by denying his motion for continuance. Discerning no error, we affirm as to all of Rogers's enumerations of error.

On appeal from a criminal conviction, we view the evidence in a light most favorable to the jury's verdict to determine whether the evidence was sufficient to prove guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d

---

[1] Robinson and Rogers were indicted along with four other co-defendants, including Robinson's son and daughter.

560) (1979); *Goss v. State*, 305 Ga. App. 497, 497 (699 SE2d 819) (2010).

So viewed, the stolen property identified in this case was primarily recovered from several warehouses — including one at 2520 Park Central Boulevard ("Park Central") and one at 2372 South Stone Mountain Lithonia Road ("South Stone Mountain") — and a clothing store called Vibez. Documents seized from the Park Central warehouse indicated that a trucking company called Robin Express was being operated from the warehouse. The Park Central warehouse also contained a number of the documents on which Robinson's and Rogers's names appeared, including a letter addressed to "Robin Express, care of George Robinson."

Robin Express was formerly known as Starlight Enterprise, which was formed in 1984 by long-time business partners, Robinson and Rogers; Robinson was named as the CEO. Robin Express became defunct approximately two years later, but was reactivated in 1999 by Robinson's daughter and Rogers, with Robinson's daughter replacing Robinson as the CEO. Rogers ran the Robin Express trucking business, along with Robinson's daughter, out of the Park Central warehouse. An employee of Starlight Enterprise, and later Robin Express, likewise testified that the company's office was located at the Park Central warehouse. During his employment, the employee owned and operated his own truck and would haul a load of goods from the Park Central warehouse about once a week. The employee saw both Robinson and Rogers at the Park Central warehouse. Based on the truck driver's observations and interactions with people in the company, he understood Robinson to be the person in charge of the entire organization and Rogers to be the second-in-command.

According to witness Deb Wright,[2] who had been in the business of brokering deals between people stealing truckloads of goods and people who were willing to buy them, Robinson and Rogers ran a trucking company out of a warehouse located at Park Central Boulevard. Wright brokered deals to help Robinson and Rogers sell truckloads of stolen items. Wright claimed that she had spent time at the Park Central warehouse and knew that both Robinson's daughter and Rogers had offices there. Wright recalled seeing stolen washing and drying machines, goods which she had in fact brokered, in the Park Central warehouse. On the occasions when Wright was present during the unloading of stolen truckloads, she saw Robinson pay cash to the individuals delivering the stolen goods.

Robin Express also utilized another smaller warehouse at South

---

[2] The State had given Wright immunity in exchange for her cooperation.

Stone Mountain. Wright knew that Robinson and Rogers ran this warehouse because she had gone there to broker a deal for stolen mattresses. A tractor and trailer belonging to Robin Express were ultimately seized from the South Stone Mountain warehouse, and their corresponding title information was recovered from the Park Central warehouse. A number of stolen articles seized from the South Stone Mountain warehouse were of the same type as those recovered from the Park Central warehouse.

According to the Robin Express employee, the same people who ran the Park Central warehouse, including Robinson and Rogers, also owned and operated Vibez. Deb Wright, who was a customer of Vibez, described it as a store that sold discounted clothing and other various housewares. According to Wright, she did not have to pay sales tax when she made purchases at Vibez. She also stated that it was possible to negotiate a lower purchase price for Vibez merchandise, but that generally only Robinson and Rogers had authority to approve a lower price. Wright testified that Rogers worked at Vibez in an office at the back of the store. Some of the stolen merchandise seized from the Vibez clothing store was the same as that found at the Park Central and South Stone Mountain warehouses.

Following their arrests and indictment, Robinson, Rogers, and their other implicated co-defendants were scheduled for a joint trial commencing September 19, 2005. During a break at the beginning of trial, however, Robinson, Rogers, and Robinson's son fled the courtroom, and the trial did not go forward. Within a few days after their flight, Robinson and Rogers obtained fake Mississippi driver's licenses using aliases. Robinson and Rogers were subsequently captured and tried together before a jury in December 2008.

## Case No. A11A0837

1. In his first enumeration of error, Robinson sets forth insufficiency claims concerning certain elements of three theft offenses of which he was convicted, specifically challenging Counts 4, 7, and 18 of the indictment.[3] Addressing only the specific grounds of sufficiency challenged in Robinson's enumeration,[4] we consider each of Robinson's contentions in turn under the *Jackson* standard, supra,

---

[3] Robinson also challenges the sufficiency of evidence as to Count 2 for conspiracy to commit theft by receiving stolen property. Because Count 2 was merged for purposes of sentencing, however, the trial court did not enter a judgment of conviction on that count, and we need not consider the sufficiency of the evidence as to that offense. See *Mays v. State*, 306 Ga. App. 507, 509 (1), n. 3 (703 SE2d 21) (2010).

[4] See *Bearden v. State*, 159 Ga. App. 892, 892 (1) (285 SE2d 606) (1981) ("[A]n enumeration of error cannot be enlarged to include other issues not made therein.") (citation and punctuation omitted).

443 U. S. at 319 (III) (B), set forth above.

(a) Count 4 of the indictment charged Robinson with theft by receiving stolen property, specifically, Maytag washing machines valued at over $500 and belonging to Jacobson Transportation Company.

> A person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen property which he knows or should know was stolen unless the property is received, disposed of, or retained with intent to restore it to the owner. "Receiving" means acquiring possession or control . . . of the property.

(Punctuation omitted.) OCGA § 16-8-7 (a).

Robinson argues that there was insufficient evidence to support Count 4 based solely upon his claim that there was no nonhearsay evidence presented as to either the location from which the Maytag washing machines were recovered, or the value of the Maytag washing machines. First, the value of the stolen property is not an essential element of the crime of theft by receiving stolen property and is relevant only in order to distinguish between a felony and a misdemeanor for purposes of sentencing. *Duncan v. State*, 278 Ga. App. 703, 704 (1) (629 SE2d 577) (2006). "As long as it appears that the stolen property is of some value, the conviction can be sustained." (Citation and punctuation omitted.) Id. At trial, a Jacobson Transportation Company employee testified that a load of 126 Maytag washing and drying machines, valued at approximately $35,000, was stolen from the company in 2003. The employee testified that a portion of the stolen equipment, valued at approximately $20,000, was later recovered in a DeKalb County warehouse and was retrieved by one of the company's truck drivers. This testimony, which the record reflects as being based upon the employee's personal knowledge, was sufficient to show that the stolen Maytag washing machines were of some value.

Second, evidence as to the specific location from which the Maytag washing machines were recovered was required to show that Robinson had possession or exercised control over the stolen Maytag washing machines. See *Buchanan v. State*, 254 Ga. App. 249, 250 (1) (562 SE2d 216) (2002) ("Receiving [under OCGA § 16-8-7 (a)] means . . . that the person had the right to exercise power over a corporeal thing, or there exists some evidence, either direct or circumstantial, that the accused was a party to the crime by aiding and abetting its commission.") (punctuation and footnote omitted); see also *Brady v. State*, 169 Ga. App. 316, 318 (3) (312 SE2d 632) (1983) ("[O]ne need not be the owner of [a] premises in order to be

deemed in possession of the goods contained therein.") (citation and emphasis omitted). Here, the Jacobson Transportation Company employee testified from personal knowledge that the company's stolen Maytag washing machines were recovered from a warehouse in DeKalb County. In relaying the specific location of the DeKalb County warehouse, however, the employee mistakenly identified its address as "2520 Park Continental Boulevard" and "Park Centennial Boulevard," rather than the 2520 Park Central Boulevard address reflected in the police property and evidence sheet. Nevertheless, the witness's misstatements concerning the specific address of the DeKalb County warehouse did not render the evidence insufficient as to the location from where the stolen property was recovered. Cf. *Schofield v. State*, 261 Ga. App. 70, 70-71 (582 SE2d 11) (2003) (holding that witness's misstatement concerning the address of the crime scene did not render evidence of venue insufficient where testimony given otherwise supported the fact that the crime scene was in Fulton County and concluding that "[a]ny conflict in the evidence created by a misstatement of the address was resolved by the jury, as it is authorized to do, in favor of venue in Fulton County") (citation and footnote omitted). Even without considering the police property and evidence sheet,[5] the employee's testimony taken as a whole was sufficient for the jury to infer that Park Central was the DeKalb County warehouse from where the stolen Maytag washing machines were recovered. Therefore, Robinson's insufficiency arguments as to Count 4 are meritless.

(b) Count 7 of the indictment charged Robinson with theft by receiving stolen property, specifically, United Parcel Service ("UPS") items valued at over $500 and belonging to Norfolk Southern Railroad. Robinson's insufficiency argument rests solely upon his claim that no nonhearsay evidence was presented as to whether the UPS items were the property of Norfolk Southern Railroad. However, "the identity of the owner is not a material element of the crime

---

[5] The State asserts that the Park Central property and evidence sheet was admissible under the business records exception to the hearsay rule. See OCGA § 24-3-14 (b); see also *Brown v. State*, 274 Ga. 31, 33 (1), n. 2 (549 SE2d 107) (2001) (noting that certain routine information, such as the time, date and location of an arrest, may be properly admitted under the business records exception because unlike the narrative portion of a police report, which is inadmissible as a business record, such routine facts would not require the reporting officer to make a conclusion or express an opinion). The State nevertheless failed to lay a proper foundation through either the testimony of the Jacobson Transportation Company employee, upon which the State relies, or the testimony of the investigating officer regarding the accuracy of the property and evidence sheet. See *Loyal v. State*, 300 Ga. App. 65, 66-67 (684 SE2d 124) (2009) ("Before admitting a document into evidence under the business records exception, a witness must lay a foundation . . . [by testifying] that the record was made (1) in the regular course of business, and (2) at the time of the event or within a reasonable time of the event.") (citations and punctuation omitted).

of theft by receiving. The State need only show that the stolen property belonged to someone other than the defendant." (Citations omitted.) *Cheney v. State*, 307 Ga. App. 66, 68 (703 SE2d 664) (2010); *Greeson v. State*, 253 Ga. App. 161, 165 (4) (558 SE2d 749) (2002) ("[O]wnership is important only in the sense of whether the goods were owned by someone other than the accused.") (citation and footnote omitted). Here, a UPS security department employee testified that, at the request of Norfolk Southern Railroad, he retrieved stolen UPS items from the Park Central warehouse and identified them as the UPS items stolen from the possession of Norfolk Southern Railroad in 2000. This testimony, which the record reflects as being based upon the UPS employee's personal knowledge, was sufficient to show that the UPS items were owned by someone other than Robinson. His sufficiency argument as to Count 7 is therefore without merit.

(c) Count 18 of the indictment charged Robinson with theft by receiving stolen property, specifically, Sealy mattresses valued at over $500 and belonging to Sealy Mattress Company. Like his other sufficiency claims, Robinson's argument is based solely upon his claim that no nonhearsay evidence was presented as to either the location from which the Sealy mattresses were recovered or the value of the Sealy mattresses.

As discussed in Division 1 (a) above, the State need only show that the stolen Sealy mattresses were of some value to sustain Robinson's conviction. *Duncan*, supra, 278 Ga. App. at 704 (1). Thus, the testimony of a Sealy Mattress Company plant manager that, based on his own personal knowledge, the stolen mattresses were worth more than $500, was sufficient. Moreover, contrary to Robinson's contention otherwise, the State did present nonhearsay evidence as to the specific locations from which the stolen Sealy mattresses were recovered. Notably, two of the investigating officers testified from their own personal knowledge that they recovered stolen Sealy mattresses from both the Park Central and South Stone Mountain warehouses. See *Smith v. State*, 304 Ga. App. 708, 709-710 (1) (699 SE2d 742) (2010) ("We have frequently held that an investigating officer's testimony concerning his personal knowledge of the crimes investigated by him is not hearsay.") (citations omitted). Thus, Robinson's insufficiency arguments regarding Count 18 lack merit.

2. Robinson contends that the trial court improperly denied his motion for new trial, expressly arguing that the verdict was contrary to the evidence and the principles of justice and equity, and decidedly against the weight of the evidence. Robinson also claims that the State failed to prove he was guilty beyond a reasonable doubt, and regardless, the evidence was sufficiently close to warrant the trial

court to exercise its discretion in granting a new trial. Of course, such arguments "may only be made to a trial court in a motion for new trial, not to an appellate court on appeal. We do not have the discretion to grant a new trial on these grounds." (Citations and punctuation omitted.) *Lewis v. State*, 304 Ga. App. 831, 833 (1) (698 SE2d 365) (2010). "The grant or denial of a motion for new trial is a matter within the sound discretion of the trial court and will not be disturbed if there is any evidence to authorize it." (Footnote omitted.) *Taylor v. State*, 259 Ga. App. 457, 460 (2) (576 SE2d 916) (2003); see also *Souder v. State*, 301 Ga. App. 348, 352 (3) (687 SE2d 594) (2009) ("A trial judge's denial of a motion for new trial on evidentiary grounds will be reversed on appeal only if there is no evidence to support the verdict.") (citation and punctuation omitted).

> [Where] an appellant is asking this court to review a lower court's refusal to grant a new trial . . . , this [C]ourt can only review the case under the standard espoused in *Jackson v. Virginia*, [supra, 443 U. S. 307] to determine if the evidence, when viewed in the light most favorable to the prosecution, supports the verdict.

(Citations and punctuation omitted.) *Colzie v. State*, 289 Ga. 120, 121 (1) (710 SE2d 115) (2011).

Although circumstantial, the evidence viewed in the light most favorable to the prosecution was enough for a rational trier of fact to find Robinson guilty of the conspiracy and theft offenses of which he was convicted. Therefore, the trial court did not err in refusing to grant Robinson's motion for new trial. See *Taylor*, supra, 259 Ga. App. at 461 (2).

3. Robinson contends that he was denied effective assistance of counsel. To establish ineffective assistance of counsel under *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), a criminal defendant bears the burden of showing "that counsel's performance was deficient and that the deficient performance so prejudiced defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different." (Citations omitted.) *Johnson v. State*, 287 Ga. 767, 769 (2) (700 SE2d 346) (2010). "[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." (Punctuation omitted.) *Strickland*, supra, 466 U. S. at 697 (IV). "The trial court's determination with respect to effective assistance of counsel will be affirmed unless its findings are clearly erroneous." (Citation omitted.) *Johnson*, supra, 287 Ga. at 769 (2).

For the reasons set forth below, we conclude that the record and

the law in this case support the trial court's finding that the conduct of which Robinson complains did not amount to ineffective assistance of trial counsel.

(a) In a one-sentence argument, Robinson first contends that his trial counsel was ineffective by failing to file a motion to sever Robinson's trial from that of his co-defendant, Rogers. There is no merit to Robinson's claim.

Robinson's ineffectiveness argument is based solely upon his conclusory statement that the outcome of his trial would have been different had his trial counsel moved to sever his case from Rogers's case. At the motion for new trial hearing, trial counsel explained that he did not seek a severance because he did not see any grounds upon which to move for one, specifically once it was established that Robinson and Rogers would be tried for their involvement in the same conspiracy. As an initial matter, the decision regarding whether to file a motion to sever is a matter of trial tactics and strategy, and the fact that such a motion was not filed does not require a finding that trial counsel was ineffective. *Clowers v. State*, 299 Ga. App. 576, 579 (2) (c) (683 SE2d 46) (2009); *Mitchell v. State*, 220 Ga. App. 264, 265 (469 SE2d 707) (1996). Moreover, Robinson completely "fails to show that a motion to sever would have been granted. . . ." (Footnote omitted.) *Clowers*, supra, 299 Ga. App. at 579 (2) (c). "Such decisions are within the discretion of the trial court, and a defendant must do more than raise the possibility that a separate trial would give him a better chance of acquittal. He must make a clear showing of prejudice and a consequent denial of due process." (Citation and punctuation omitted.) *Mitchell*, supra, 220 Ga. App. at 266. Robinson failed to do so here.

Accordingly, Robinson cannot demonstrate that trial counsel was ineffective on the grounds that he did not file a motion to sever.

(b) In a similar one-sentence argument, Robinson claims that his trial counsel was also ineffective by failing to object to the trial court's jury charge that the State's burden to prove venue for the conspiracy charge was "beyond a reasonable belief," rather than "beyond a reasonable doubt."

The trial court instructed the jury that

> it is not necessary in order to establish venue that the State prove that the defendants ever entered into the county or ever came into the county, provided you find *beyond a reasonable belief* that the substantive offense was committed in this county and you find that the defendant was a party to it or a conspirator.

When later questioned about why he failed to object to this jury

instruction, trial counsel explained that he had not noticed the trial court's misstatement. Even if trial counsel's failure to object rendered his performance deficient, however, Robinson failed to demonstrate that such deficiency so prejudiced him that there is a reasonable likelihood that, but for trial counsel's error, the outcome of the trial would have been different. See *Render v. State*, 288 Ga. 420, 424 (2) (b) (704 SE2d 767) (2011).

> The instruction as given must be considered by this Court in the context of the trial court's charge as a whole. This is also the case when the challenge to a specific jury instruction is made in the context of a claim of the ineffective assistance of counsel. . . . [A]s a general rule, the existence of a mere verbal inaccuracy in a jury instruction, resulting from a palpable "slip of the tongue" and which could not have misled or confused the jury will not provide a basis for reversal of a defendant's conviction.

(Citation and punctuation omitted.) Id. In this case specifically, where the record reveals that the trial judge used the correct phrase, "beyond a reasonable doubt," numerous times prior to his "slip of the tongue," and where the concept of reasonable doubt was repeatedly and accurately conveyed to the jury,[6] no reversible error occurred. Cf. *Hann v. State*, 292 Ga. App. 719, 723-724 (7) (665 SE2d 731) (2008) (holding trial court's reference to "reasonable certainty" did not constitute reversible error where "the charge given as a whole repeatedly and accurately conveyed the concept of reasonable doubt"); *Mendoza v. State*, 274 Ga. App. 662, 664 (2) (618 SE2d 712) (2005) ("In looking at the entirety of the jury instructions, it is clear that no harm was committed, as the trial transcript reflects that the judge used the correct phrase, 'beyond a reasonable doubt,' several times, both before and after the erroneous charge [that the jury would be authorized to convict if it found defendant guilty 'behind' a reasonable doubt].").

"Under these circumstances, we cannot conclude that reversal is required on ineffectiveness grounds." *Henderson v. State*, 252 Ga. App. 295, 298 (1) (b) (556 SE2d 204) (2001).

4. In a single enumeration, Robinson sets forth four different errors of law that were allegedly committed by the trial court below. Specifically, Robinson claims that it was error for the trial court to (a) deny Robinson's motion to suppress certain evidence that was

---

[6] This included a specific instruction that venue "must be proven by the State beyond a reasonable doubt as to each crime charged in the indictment, just as any other element of the offense."

improperly seized; (b) deny Robinson's motion for mistrial; (c) give the State's requested jury instruction on "deliberate ignorance"; and (d) allow the State to impeach Robinson with his prior bail-jumping conviction. Each of these claims generally consist of little more than Robinson's conclusory statement that the trial court's conduct violated his rights under the state and federal constitutions.

(a) Robinson asserts that the trial court erred by denying his motion to suppress all evidence obtained following the execution of search warrants for three warehouse locations, the Vibez clothing store, and Robinson's vehicle and residence, claiming that the search warrants "for said locations were improperly and unconstitutionally issued without sufficient probable cause."

> When we review a trial court's decision on a motion to suppress, the evidence is construed most favorably to uphold the findings and judgment of the trial court; the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous and will not be disturbed if there is any evidence to support them.

(Punctuation and footnote omitted.) *Brown v. State*, 307 Ga. App. 797, 801 (2) (706 SE2d 170) (2011).

So viewed, the evidence adduced at the suppression hearing includes the affidavits submitted in support of the search warrants for Robinson's residence, as well as the three warehouses, including Park Central and South Stone Mountain. These "affidavit[s] on [their] face provided the magistrate with enough information to come to the 'practical, common-sense' conclusion that there was a fair probability that evidence of a crime could be found at [each of those locations]." *State v. Hunter*, 282 Ga. 278, 279 (646 SE2d 465) (2007). In light of the substantial deference we must give to a magistrate's finding of probable cause, we conclude that the trial court did not err in denying Robinson's motion to suppress the evidence obtained from the three warehouses and his residence.

We likewise affirm the trial court's ruling with respect to the evidence obtained from Robinson's vehicle. Notably, such evidence included only a framed stamp and coin collection. Because the framed stamp and coin collection did not form the basis of any of the crimes for which Robinson was convicted, "we find no reasonable possibility that the evidence may have contributed to the verdict." *Ramirez v. State*, 279 Ga. 569, 575 (6) (619 SE2d 668) (2005). Thus, even if such evidence was acquired "as the result of an unlawful seizure, we nevertheless affirm the trial court's denial of the motion to suppress because any error in that ruling was harmless beyond a reasonable doubt." Id. at 574 (6); accord *White v. State*, 258 Ga. App.

546, 548 (2) (574 SE2d 629) (2002).[7]

Finally, as to the evidence obtained from the Vibez clothing store, the trial court found that such was lawfully seized pursuant to the plain view exception to the search warrant requirement. We agree.

> Objects within the plain view of an officer who is in a lawful position are subject to seizure and may be introduced into evidence. The plain view rule applies only if (1) the initial intrusion which afforded the plain view was lawful, (2) the discovery of the evidence was inadvertent, and (3) the incriminating nature of the evidence was immediately apparent.

(Citation omitted.) *Reid v. State*, 298 Ga. App. 889, 891 (2) (681 SE2d 671) (2009). According to the investigating officer's testimony at the motion to suppress hearing,[8] the police entered Vibez during business hours in search of Robinson's son, who purportedly owned the store, to execute an outstanding warrant relating to an investigation of stolen property located at the Park Central warehouse. The door to the store was open and unlocked, and there were no signs indicating the store's hours or that the store was otherwise closed. As no salesperson was present inside the store, the investigating officers proceeded to look around the store for Robinson's son. While doing so, the officers saw a sales display containing some of the same stolen merchandise that they had previously uncovered from the Park Central warehouse. This evidence authorized the determination that the stolen merchandise was in plain view, and likewise supported the trial court's denial of Robinson's motion to suppress the evidence seized from Vibez. Cf. id. at 892 (2).

(b) Robinson challenges the trial court's denial of his motion for mistrial, contending that his character was improperly placed into evidence when the trial court read certain "unproven and unsubstantiated allegations" set forth in Count 2 of the indictment, charging Robinson with conspiracy to commit the offense of theft by receiving stolen property. "The abuse of discretion standard applies

---

[7] Indeed, even where a trial court commits an error of constitutional magnitude, as Robinson claims here, a defendant's conviction will not be reversed where such error is harmless. See *Willingham v. State*, 279 Ga. 886, 887 (1) (622 SE2d 343) (2005). Before a federal constitutional error is held to be harmless, however, a "court must be able to declare a belief that it was harmless beyond a reasonable doubt." (Citation and punctuation omitted.) *Little v. State*, 230 Ga. App. 803, 806 (2) (498 SE2d 284) (1998).

[8] See *Reid*, supra, 298 Ga. App. at 892 (2) ("[I]t was for the trial court, not this Court, to resolve any conflicts in the record or questions concerning the credibility of the agent in deciding the motion to suppress.") (citation and punctuation omitted).

to the review of the denial by the trial court of a motion for mistrial." (Citation omitted.) *Underwood v. State*, 218 Ga. App. 530, 534 (3) (462 SE2d 434) (1995).

Robinson specifically points to the third overt act set forth in Count 2, which accused Robinson of threatening an unindicted co-conspirator, following his arrest for delivering stolen property, to ensure said co-conspirator would not cooperate with law enforcement. As an initial matter, the trial court's reading of this portion of the indictment does not necessarily equate with an improper introduction of character evidence. Notably, the trial court repeatedly instructed the jury that it was not to consider the indictment as evidence in the case.[9]

Moreover, even if we were to assume that the trial court's reading of this overt act incidentally placed Robinson's character into evidence, we discern no abuse of discretion in denying Robinson's motion for mistrial on such ground.

> The [s]urrounding circumstances constituting part of the res gestae may always be shown to the jury along with the principal fact, and their admissibility is within the discretion of the trial court. Hence, acts and circumstances forming a part or continuation of the main transaction are admissible as res gestae[,] and it does not matter that the act is another criminal offense and does not tend to establish the main offense.

(Citation omitted.) *Gumbs v. State*, 258 Ga. App. 230, 231 (2) (573 SE2d 485) (2002). Here, the main transaction was the conspiracy to commit the offense of theft by receiving stolen property, and the threatening of an unindicted co-conspirator following his arrest for delivering stolen property was an overt act in continuation of that transaction. Cf. id. "The fact that such part of the res gestae incidentally placed [Robinson's] character in issue does not render it inadmissible." (Citation and punctuation omitted.) *Roberts v. State*, 221 Ga. App. 196, 198 (2) (471 SE2d 27) (1996).

Accordingly, we affirm the trial court's denial of Robinson's motion for mistrial.

(c) Robinson argues that it was error for the trial court to give

---

[9] Additionally, the State concedes that it did not present any evidence substantiating the overt act Robinson challenges, as it had instead proffered evidence in support of the other overt acts set forth in Count 2. See *Hall v. State*, 241 Ga. App. 454, 460 (1) (525 SE2d 759) (1999) ("[Defendant] could be convicted of conspiracy even if . . . the jury did not believe that [defendant] had committed the one overt act which he independently was alleged to have committed, as long as one act by [any one co-conspirator] was proven to the jury's satisfaction.") (citations omitted).

the State's requested jury instruction on "deliberate ignorance." "It is well established that in reviewing an allegedly erroneous jury instruction, we apply the plain legal error standard of review." (Punctuation and footnote omitted.) *Judice v. State*, 308 Ga. App. 229, 232 (3) (707 SE2d 114) (2011).

Robinson specifically argues that the trial court's deliberate ignorance charge "was inappropriate for the evidence admitted at trial." We disagree. "The deliberate ignorance instruction is based on the alternative to the actual knowledge requirement at common law that if a party has his suspicions aroused but then deliberately omits to make further enquiries, because he wishes to remain in ignorance, he is deemed to have knowledge." (Citation and punctuation omitted.) *Perez-Castillo v. State*, 257 Ga. App. 633, 634 (572 SE2d 657) (2002).

> An instruction on deliberate ignorance is appropriate when the facts support the inference that the defendant was aware of a high probability of the existence of the fact in question and purposely contrived to avoid learning all of the facts in order to have a defense in the event of a subsequent prosecution.

(Citation and punctuation omitted.) *Aguilera v. State*, 293 Ga. App. 523, 525 (1) (667 SE2d 378) (2008). Testimony supporting such an inference existed in this case.

Notably, Robinson specifically denied that he had anything to do with Robin Express or that he knew anything about it. Robinson nevertheless conceded that Robin Express was the name on his cell phone account. Robinson likewise denied any involvement in the trucking business and claimed that he and Rogers were partners only in an unrelated loan business. He admitted, however, that a substantial amount of his loan business documents were found at the Park Central warehouse. Robinson also testified that he had been to the Park Central warehouse about 15 to 20 times, but that he would go only for the purpose of visiting. When asked why he would sometimes answer the Park Central warehouse phone, Robinson gave inconsistent responses, including "to set up stuff," he did not "really know why [he] answered the phone," and "it was because somebody told [him] to go over there at a certain time." Robinson also denied any connection to Vibez, but admitted he was there all the time because he brokered numerous loans at the barbershop next door. In response to whether he had authority to decide purchase prices for Vibez merchandise, Robinson maintained that he had nothing to do with Vibez, but explained that a Vibez receipt might say "this sale is okay per George," because he would help the store

in "playing up the customer." Finally, Robinson testified that the reason he fled the courtroom in 2005 was because it looked like he was "getting wrapped up into something that nobody really had no involvement with other than [his] son and daughter."

"This evidence was more than sufficient to support the instruction to the jury." *Polite v. State*, 273 Ga. App. 235, 242 (8) (614 SE2d 849) (2005) ("To authorize a jury instruction on a subject, there need only be produced at trial slight evidence supporting the theory of the charge.") (citation and punctuation omitted). Therefore, the trial court's instruction on deliberate ignorance was not error. *Aguilera*, supra, 293 Ga. App. at 525 (1).

(d) Robinson argues that it was error to allow the State, over Robinson's objection, to impeach him with his prior bail-jumping conviction. A trial court's finding of the admissibility of prior convictions "is subject to scrutiny for harmless error and a new trial is not automatically required." (Citations and punctuation omitted.) *Lawrence v. State*, 305 Ga. App. 199, 203 (3) (699 SE2d 406) (2010).

On cross-examination, the State was permitted to impeach Robinson's credibility by introducing a certified copy of his 1984 conviction for bail jumping. When ruling upon the admissibility of a defendant's prior conviction that is more than ten years old, the trial court is authorized to admit such evidence only when it "determines, in the interest of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." OCGA § 24-9-84.1 (b). This Court requires "that the trial court's findings be made expressly on the record to ensure compliance with the procedural safeguards provided under the statute." (Citation and footnote omitted.) *Miller v. State*, 298 Ga. App. 792, 797 (4) (681 SE2d 225) (2009).

With respect to a defendant's prior convictions that are *less* than ten years old, we have found it to be error where a trial court admits such without making an express ruling that the probative value of admitting the evidence substantially outweighs its prejudicial effect to the defendant, as required by OCGA § 24-9-84.1 (a) (2). See, e.g., *Johnson v. State*, 307 Ga. App. 791, 793 (706 SE2d 150) (2011); *Lawrence*, supra, 305 Ga. App. at 202-203 (3). In so holding, this Court has reasoned "that the legislature, in using the word 'substantially' in OCGA § 24-9-84.1 (a) (2) for the impeachment of a defendant, intended to create a standard different from that provided in OCGA § 24-9-84.1 (a) (1)[10] for the impeachment of a

---

[10] OCGA § 24-9-84.1 (a) (1) sets a lower standard as to when a witness can be impeached with prior-conviction evidence in that a trial court must only determine "that the probative value of admitting the evidence outweighs its prejudicial effect to the witness."

witness." *Lawrence*, supra, 305 Ga. App. at 202 (3); accord *Johnson*, supra, 307 Ga. App. at 793.

We construe OCGA § 24-9-84.1 (b) in the same light, again recognizing that "where the legislature uses certain language in one part of the statute and different language in another, the [C]ourt assumes different meanings were intended." (Citation and punctuation omitted.) *Lawrence*, supra, 305 Ga. App. at 202 (3). Accordingly, we assume that the legislature intended to address "the slight probative value of over-age convictions," *Hinton v. State*, 280 Ga. 811, 819 (7) (631 SE2d 365) (2006), by creating a standard different from those provided in OCGA § 24-9-84.1 (a) (1) and (2). Thus, when ruling on the admissibility of prior convictions under OCGA § 24-9-84.1 (b), a trial court is required to make express findings that in the interest of justice, the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. As we have held with respect to the express balancing test required under OCGA § 24-9-84.1 (a) (2), "[f]actors to be considered include the kind of felony involved, the date of the conviction, and the importance of the witness's credibility." (Footnote omitted.) *Quiroz v. State*, 291 Ga. App. 423, 428 (4) (662 SE2d 235) (2008).

Here, the trial court ruled that "given [Robinson's] testimony and given the facts of this case," his 1984 bail-jumping conviction was "something that the jury [could] consider." Although the trial court made a ruling that Robinson's prior conviction was admissible, it failed to make the required express findings under the proper standard. Although the trial court's error is subject to scrutiny for harmless error, the fact that Robinson's convictions were primarily based upon circumstantial evidence forecloses the conclusion that the overwhelming evidence established Robinson's guilt so as to make the admissibility of the prior conviction harmless beyond a reasonable doubt. *Miller*, supra, 298 Ga. App. at 797 (4). "Under these circumstances, we are unable to conclude whether a new trial is required at this time." Id. Instead, we must remand this case with direction to the trial court to enter express findings on the record as to whether, in the interest of justice, the probative value of Robinson's 1984 bail-jumping conviction substantially outweighed its prejudicial effect, considering the factors set forth in *Quiroz*. See id. If the trial court determines that the prior conviction was inadmissible after engaging in the balancing test required under OCGA § 24-9-84.1 (b), then a new trial will be required. See id. "But, if the trial court determines that the prior conviction was admissible, a new trial will not be mandated, subject to appellate review for an abuse of discretion." (Citation omitted.) Id.

*Case No. A11A0838*

5. Rogers first argues that the trial court erred by allowing similar transaction evidence. "Absent an abuse of discretion, we will not disturb a trial court's determination that similar transaction evidence is admissible." (Citation omitted.) *Porter v. State*, 264 Ga. App. 526, 531 (4) (591 SE2d 436) (2003).

The Supreme Court of Georgia in *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991), established that the State, at a Uniform Superior Court Rule ("USCR") 31.3 (B) hearing, "must make three affirmative showings as to each independent offense or act it seeks to introduce." Specifically, the State must show

> that it is seeking to introduce the evidence for a permissible purpose; there is sufficient evidence that the accused committed the independent offense or act; and there is a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter.

(Punctuation and footnote omitted.) *Mattox v. State*, 287 Ga. App. 280, 282 (1) (651 SE2d 192) (2007).

Before trial, the State filed a notice of intent to present evidence of Rogers's June 6, 2007, arrest in Cobb County for theft by receiving stolen property as similar transaction evidence. During the USCR 31.3 (B) hearing, the State set forth the similar transaction evidence, and then went on to inform the trial court of how the evidence satisfied the three *Williams* requirements. The State asserted that the 2007 Cobb County arrest and the theft and conspiracy crimes charged all involved Rogers's participation in the warehouse deliveries and cash sales of truckloads of stolen goods. Notably, evidence of the 2007 Cobb County arrest showed that Rogers was observed backing a Ryder box truck, which had been rented under the name of Rogers's alias, directly into the loading dock of a warehouse. Accompanying the truck was a separate vehicle driven by Robinson's daughter. Robinson's daughter and Rogers went into the warehouse for approximately 15 minutes. Shortly after leaving the warehouse, their respective vehicles were stopped and searched by the police. The cargo area of the Ryder truck was found to be empty with the exception of several of the same stolen Casio calculators that were later recovered from a search of the warehouse. A search of the vehicle driven by Robinson's daughter revealed $10,000 in cash that was bundled in the same manner as $30,000 in cash recovered from a search of the warehouse. We agree with the trial court that this evidence was admissible for the purpose of showing a common

scheme or plan, or a modus operandi; that there was sufficient evidence to find that Rogers was the person who committed the act; and that there was sufficient similarity between the prior Cobb County arrest and the crimes charged. Thus, the trial court did not abuse its discretion in admitting evidence of Rogers's prior Cobb County arrest as similar transaction evidence. See *Woods v. State*, 275 Ga. App. 340, 342 (1) (a) (620 SE2d 609) (2005) (concluding that details of prior arrest were admissible as similar transaction evidence where such involved circumstances similar to those giving rise to defendant's theft charges, even though defendant was never prosecuted for prior arrest).

6. Rogers raises ineffective assistance in his second enumeration, contending that he was denied his right to conflict-free assistance of counsel. Specifically, Rogers argues that trial counsel should have withdrawn upon learning that Rogers had filed a lawsuit against him. We will not disturb a trial court's findings regarding a defendant's claim of ineffective assistance of counsel unless clearly erroneous. *Williams v. State*, 273 Ga. App. 213, 217 (3) (614 SE2d 834) (2005).

> In order for a criminal defendant to prevail on a claim that his attorney was ineffective due to a conflict of interest, he must show that an actual conflict of interest adversely affected his lawyer's performance. Furthermore, the conflict of interest must be palpable and have a substantial basis in fact. A theoretical or speculative conflict will not impugn a conviction which is supported by competent evidence.

(Citation, punctuation and footnote omitted.) *Holsey v. State*, 291 Ga. App. 216, 221 (3) (b) (661 SE2d 621) (2008).

Here, Rogers filed a pro se lawsuit against trial counsel seeking damages for purported deficiencies in his performance prior to Rogers's December 2008 trial. Rogers filed the lawsuit on the first day of his trial in December 2008; on the same day, Rogers also filed a pro se motion to continue his trial, identifying his lawsuit against trial counsel as one of the grounds warranting a continuance. The trial judge refused to entertain Rogers's request for a continuance of his third scheduled trial on the basis of Rogers's lawsuit.[11] Rogers's

---

[11] The State characterizes Rogers's lawsuit as just another one of his "transparent, specious, repeated attempts" to delay his trial. The trial court agreed. Significantly, Rogers successfully delayed his first scheduled trial in September 2005 by fleeing the courthouse during a short recess. Rogers was arrested two years later. On the first day of his second scheduled trial in February 2008, Rogers filed a pro se complaint against the trial counsel who

lawsuit against trial counsel was ultimately dismissed for want of prosecution. On appeal, Rogers's ineffectiveness argument rests solely upon his claim that the filing of this lawsuit created an "actual conflict" that should have resulted in his trial counsel's withdrawal. However, even the case authority upon which Rogers primarily relies, *Mickens v. Taylor*, 535 U. S. 162 (122 SC 1237, 152 LE2d 291) (2002), required Rogers to show more than the mere existence of an "actual conflict." That is, he must establish, at a minimum, that the conflict of interest adversely affected his counsel's performance. Id. at 170-172 (II). Rogers nevertheless showed nothing more than the mere existence of a lawsuit that he filed pro se against trial counsel. Rogers failed to show that such was anything more than a specious delay tactic, let alone present evidence of a conflict that would warrant counsel's withdrawal from the case. Cf. *Williams*, supra, 273 Ga. App. at 218 (3) (c) (rejecting defendant's claim of ineffective assistance due to a conflict where defendant's argument was based solely upon trial counsel's failure to withdraw after learning that defendant intended to sue him). Significantly, Rogers failed to set forth any "evidence that the attorney-client relationship had deteriorated such that counsel was unable to be effective." Id. Thus, the trial court did not clearly err in finding that Rogers failed to carry his burden of proving that trial counsel's refusal to withdraw constituted ineffective assistance.

7. Although Rogers did not make a written motion to recuse the trial judge,[12] he enumerates as error that the trial judge should have sua sponte recused himself from Rogers's trial. On appeal, a trial judge's failure to sua sponte recuse himself will be reversed "only where the conduct or remark of the judge constitutes an egregious violation of a specific ethical standard, and it must support the inescapable conclusion that a reasonable person would consider the judge to harbor a bias that affects his ability to be impartial." (Citations and punctuation omitted.) *Lemming v. State*, 292 Ga. App. 138, 141 (1) (663 SE2d 375) (2008).

Rogers specifically contends that the trial judge erred in refusing to recuse himself after being made aware that he was named as a defendant in a federal lawsuit Rogers filed pro se on the same day that Rogers's trial commenced. "There is no duty for a trial judge to

---

was representing Rogers at that time, as well as a motion to continue his trial because of such complaint. Before the jury was called, the judge permitted Rogers's trial counsel to withdraw and severed Rogers's case from the February 2008 trial.

[12] Under USCR 25.1, all motions to recuse or disqualify a presiding judge in a particular case "must be timely filed in writing and all evidence shall be presented by accompanying affidavits that fully set out the facts upon which the motion is founded." *Hargrove v. State*, 299 Ga. App. 27, 31 (2) (681 SE2d 707) (2009).

sua sponte recuse himself absent a violation of a specific standard of OCGA § 15-1-8 or Canon 3 (E) (1) (a) through (c) of the Code of Judicial Conduct." (Citation and punctuation omitted.) *Lemming*, supra, 292 Ga. App. at 141 (1). Generally, "[e]ven when the defendant sue[s] the trial judge, arising out of the case before the judge, such suit d[oes] not provide grounds for recusal; otherwise, parties could file frivolous suits against the trial judge for delay and to judge shop." (Citation omitted.) *Baptiste v. State*, 229 Ga. App. 691, 697 (1) (494 SE2d 530) (1997). Here, recognizing the potential of defendants filing "spurious lawsuits [to] get out of going to trial for that reason," the trial judge decided to move forward with Rogers's trial notwithstanding the lawsuit.

Rogers nevertheless claims that "[b]ecause the matter was currently pending in federal court, the trial [judge] had a direct, certain and immediate pecuniary interest in the outcome of the matter, which should have disqualified him." See OCGA § 15-1-8 (a) (1) (disqualifying a judge from sitting "in any case or proceeding in which he is pecuniarily interested"). Rogers's conclusory assertion, however, speaks only to the judge's pecuniary interest in the outcome of Rogers's federal civil lawsuit against the judge. Significantly, Rogers's argument fails to address any pecuniary interest the trial judge may have had in the subject of Rogers's *criminal case*, which is in fact the case from which Rogers claims the judge should have been disqualified. To warrant recusal from a case, "[t]he liability or pecuniary gain or relief to the judge must occur upon the event of the suit, not result remotely in the future . . . ." (Citation and punctuation omitted.) *Reese v. State*, 252 Ga. App. 650, 654 (5) (556 SE2d 150) (2001). Rogers cannot show that the trial judge had any direct and immediate interest in the outcome of Rogers's criminal case; the effect of Rogers's criminal trial on Rogers's seemingly spurious lawsuit against the judge is a matter of speculation. See id. Accordingly, the trial judge was not required to recuse himself under OCGA § 15-1-8 (a) (1).

To the extent Rogers alleges a violation of the Code of Judicial Conduct, which provides a coextensive, but "broader rule of disqualification than that provided in the statute," (citation and punctuation omitted) *Gillis v. City of Waycross*, 247 Ga. App. 119, 119-120 (543 SE2d 423) (2000), Canon 3 (E) (1) (a) states that judges shall disqualify themselves in any proceeding in which their impartiality might reasonably be questioned, including instances where the judge has a personal bias or prejudice concerning a party. Rogers, however, has not shown any cause for speculation that the judge was so influenced by the filing of a lawsuit — which was likewise filed against DeKalb County, the DeKalb County prosecutor, and police officers involved in the investigation, and raised as a ground pur-

portedly supporting Rogers's motion to continue his trial — as to have infected the trial judge with a bias of such intensity that it prevented Rogers from obtaining a fair trial. See *Baptiste*, supra, 229 Ga. App. at 697 (1). Accordingly, the trial judge's refusal to sua sponte recuse himself was not error.

8. Rogers claims that the trial court erred by allowing the State to present to the jury a time line that indicated Rogers fled during his first scheduled trial in 2005. However, "[t]he State is entitled to offer evidence of flight while a defendant is awaiting trial and argue that it demonstrates consciousness of guilt." (Citations and punctuation omitted.) *Turner v. State*, 237 Ga. App. 642, 644 (3) (516 SE2d 343) (1999). Accordingly, it was not error for the trial court to allow the State to inform the jury of Rogers's escape from the courthouse on the first day of his September 2005 trial to serve as circumstantial evidence of guilt. See *Smith v. State*, 277 Ga. 508, 508 (2) (591 SE2d 805) (2004).

9. In his final enumeration, Rogers argues that the trial court erred by denying his motion for a continuance. "The decision to deny a motion for continuance is in the discretion of the trial court, and there must be a clear showing of abuse of that discretion in order to warrant a reversal." (Footnote omitted.) *Sanders v. State*, 245 Ga. App. 701, 702 (1) (538 SE2d 772) (2000).

Rogers requested a continuance on the first morning of his trial, claiming that such was warranted because he had only just received a box of evidence from the State, and because he had not yet received an FBI file previously requested from the State. The State explained that it had not produced the entire FBI file because it contained information about other people and issues that were not relevant to Rogers's case. With respect to the box of evidence, the State asserted that it contained only documents concerning older crimes for which Rogers was not on trial and that the State was not going to introduce them at trial.

Rogers nevertheless contends that insufficient time to prepare the case and newly discovered evidence were both valid grounds for a continuance, claiming that one day before trial was "insufficient," and that the day of trial was "unreasonable." However, "[m]ere shortness of time for preparation does not in itself show a denial of the rights of the accused. He must also show harmful error." (Citation and punctuation omitted.) *Robinson v. State*, 202 Ga. App. 576, 577 (2) (a) (415 SE2d 21) (1992). Rogers "has not shown how additional time would have benefitted him or how the lack of time harmed him," id.; nor has he shown that the evidence of which he complains was in fact relevant to his case. Thus, the trial court did not abuse its discretion in denying Rogers's motion for continuance.

*Judgment affirmed on condition and case remanded with*

*direction in Case No. A11A0837. Judgment affirmed in Case No.
A11A0838. Ellington and Doyle, JJ., concur.*

DECIDED NOVEMBER 21, 2011.

*Kenneth W. Sheppard*, for appellant (case no. A11A0837).
*Jolanda E. Herring*, for appellant (case no. A11A0838).
*Robert D. James, Jr.*, District Attorney, *Daniel J. Quinn*, Assistant District Attorney, for appellee.